IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARCELINO CALDERON SILVA,

        Plaintiff,                     No. CIV S-01-0024 LKK EFB P

       vs.

ROSANNE CAMPBELL, et al.,

        Defendants.            FINDINGS AND RECOMMENDATIONS

_____/

      Plaintiff, a prisoner proceeding pro se, filed this action under 42 U.S.C. § 1983 alleging civil rights violations. Currently under consideration is defendants' motion for summary judgment.

      The case proceeds on the April 19, 2001, first amended complaint which alleges that defendant Acuna placed packets of heroin in plaintiff's cell, thereby subjecting him to disciplinary sanctions, including placement in administrative segregation. Plaintiff alleges that Acuna put the packets in his cell in retaliation for plaintiff having filed grievances. The complaint also alleges that defendant Campbell refused to release plaintiff from administrative segregation in retaliation for plaintiff having filed grievances. As explained below, plaintiff has failed to present evidence sufficient to show a genuine issue of material fact and defendants' motion must be granted.

1

**I.      Facts**

At all times relevant to this action, plaintiff was a prisoner confined at Folsom State Prison ("FSP").  Defs.' Mot. for Summ. J., Stmt. of Undisp. Facts in Supp. Thereof ("SUF") 1. It appears from the record that defendant Campbell was the Acting Warden and defendant O. Acuna was the Facility Captain of Unit I, but neither Campbell nor Acuna submit declarations explaining their positions at the prison during the relevant time period.  Pl.'s Opp'n, Exs. B, C, at unnumbered p. 11.

It further appears from the record that plaintiff is not timid about filing grievances.  On August 27, 1999, he filed one, designated Log # FSP 099-791, alleging that an unidentified counselor violated prison regulations by waiting more than 10 work days to respond to another grievance plaintiff had filed and by not completing a declaration necessary for plaintiff to proceed *in forma pauperis* in judicial proceedings.  SUF 16; Defs.' Memo. of P. & A. in Supp. of Mot. for Summ. J. ("Defs.' Ex.") H at unnumbered p. 1.  On December 20, 1999, plaintiff filed another grievance, designated Log # FSP 00-0051, in which he alleged that a guard failed to process his legal mail.  SUF 16.  On March 12, 2000, plaintiff filed yet another grievance, designated Log. No. 00-073, complaining that he had been having difficulties receiving envelopes and writing paper.  Pl.'s Opp'n, Ex. E.  Defendant Campbell signed the reviewer's action partially to grant the appeal on the second formal level of review.  *Id.*  At deposition, plaintiff admitted that he did not identify or mention Acuna as a reviewing officer in these grievances.  SUF 16.

Plaintiff also helped other prisoners challenge prison policy and rules.  Relevant here is the seismic retrofit project at FSP, which generated a great deal of airborne debris.  Pl.'s Opp'n, Ex. A.  In response to this condition, prisoners - contrary to prison policy - covered openings from their cells to the tiers.  For a time, prison officials permitted this practice.  However, on April 14, 2000, defendant Acuna directed guards to remove all "sheets, plastic, card board, privacy screens, curtains, etc.," that prisoners had put up in an attempt to shield themselves from

airborne particles. Pl.'s Opp'n, Ex. B; SUF 17. Plaintiff submits a copy of a grievance that he drafted for a fellow prisoner.[1] Pl.'s Opp'n, Ex. C, unnumbered p. 1. The grievance complained about Acuna's directive, asserting that it violated the prisoner's rights and would expose him to harmful substances. *Id*. It is unclear whether plaintiff or a different prisoner copied and distributed this grievance to other prisoners. Defs.' Memo. of P. & A. in Supp. of Mot. for Summ. J., Ex. A ("Defs.' Ex.")(Excerpts of plaintiff's deposition)(hereafter "Pl.'s Dep."), at 31, 44. However, it is undisputed that using the grievance plaintiff had drafted as a template, about 250 prisoners (in addition to the prisoner plaintiff originally helped), filed this grievance complaining about Acuna's directive. Pl.'s Dep., at 31, 44; SUF 17. Plaintiff did not sign any of these grievances or submit one on his own behalf. SUF 18; Pl.'s Dep., at 18. Defendant Acuna signed the first formal level response denying the April 20, 2000, appeal that plaintiff had prepared. Pl.'s Opp'n, Ex. C, unnumbered p. 7.

     On July 13, 2000, guards searched various cells on the tier where plaintiff was housed. SUF 2. The record reveals no connection between this search and the seismic retrofit activities. During the search, a guard, S. Novikoff, found three packets of a suspicious substance tucked into a bible in the cell plaintiff shared with a fellow prisoner. SUF 2; Pl.'s Dep., at 45; Defs.' Memo. of P. & A., Ex. B, at 1 (Rules Violation Report of 7/13/00). The bible was written in Spanish, which plaintiff and his cellmate both read and spoke. Defs.' Ex. G, at unnumbered p. 2. It was found in what prison officials deemed to be a "common area," in the bottom bunk on a pillow. Defs.' Ex. B, at 1; Defs.' Ex. G, at unnumbered p. 2. Based on field testing, prison officials tentatively determined that the substance was heroin. Pl.'s Opp'n, Ex. G, at p. 2. That the drug was contained in three separate packets suggested to prison officials that it was intended for sale, as opposed to personal use. SUF 2. Consequently, a rules violation report was filed charging plaintiff with the distribution of narcotics. *Id*. Officials charged his cellmate with the

---

[1] Plaintiff himself did not file the grievance. He simply prepared it for the other inmate.

same infraction. Pl.'s Opp'n, Ex. I, at 2. A July 31, 2000, laboratory report confirmed that the substance was heroin. Pl.'s Opp'n, Ex. J.

Prison officials then placed plaintiff in administrative segregation pending a hearing on the charge.[2] SUF 3. Prison officials also referred the cases of both plaintiff and his cell-mate to the District Attorney's Office for possible criminal prosecution. SUF 5; Pl.'s Opp'n, Ex. I, at 2. Pursuant to prison regulations, on July 24, 2000, plaintiff waived his right to a timely prison disciplinary hearing, pending the District Attorney's decision whether to pursue criminal charges. SUF 4; Defs.' Ex. B, at unnumbered p. 1; *see* Cal. Code Regs. tit. 15, § 3320(b). Every 30 days from July 2000 through January 2001, plaintiff appeared before the Institutional Classification Committee for review of his placement in administrative segregation. SUF 6. At each appearance, the committee found that the placement was appropriate because the allegations in the rules violation report were serious. *Id.*

For some reason not clear in the record, the disciplinary hearing was held before the District Attorney decided whether to file criminal charges. Thus, on January 10, 2001, a disciplinary hearing was held on the allegations in the rules violation report. Defs.' Ex. G, at unnumbered p. 1-2. Plaintiff was found guilty of distribution of narcotics, as was his cellmate. SUF 9; Pl.'s Opp'n, Ex. I, at 2. As a result, plaintiff lost 180 days of credit and various privileges, such as visits, and was required to undergo drug testing and to participate in a substance abuse program. Defs.' Ex. G, at unnumbered p. 2. The findings specifically noted that plaintiff and his cellmate, who had been charged with the same offense, were equally responsible for the heroin found in the cell. Defs.' Ex. G, at unnumbered p. 2; Pl.'s Opp'n, Ex. I.

---

[2] California's prison regulatory scheme provides for the placement in administrative segregation a prisoner who is suspected of violating prison rules. *See* Cal. Code Regs. tit. 15, § 3335(a) ("When an inmate's presence in an institution's general inmate population presents an immediate threat to the safety of the inmate or others, endangers institution security or jeopardizes the integrity of an investigation of an alleged serious misconduct or criminal activity, the inmate shall be immediately removed from the general population and be placed in administrative segregation.");

Plaintiff unsuccessfully appealed to the Director's Level of Review. Pl.'s Dep., at 49. The matter was submitted to a CSR to approve a six-month SHU term. Defs.' Ex. C. Plaintiff was released from administrative segregation. SUF 7. Ultimately, on March 9, 2001, the District Attorney notified prison officials that plaintiff would not be charged with any crime. SUF 8; Defs.' Ex. B, at unnumbered p. 1.

On August 9, 2001, the CSR to whom plaintiff's disciplinary conviction had been referred refused to approve the recommended penalties for two reasons. First, the evidence was insufficient to sustain a finding of trafficking in heroin. In particular, the CSR found that "all that's been proven is that inmate (i.e., Silva) and his cell mate were found to be in possession of 3 bindles that later proved positive for heroin that may or may not have been for personal consumption." Defs.' Ex. C. Second, the charge was made before lab testing verified that the substance was heroin. *Id*. The field test was insufficient to make the charges. *Id*. Thus, the CSR directed that the rules violation report be reissued and reheard, and prohibited the forfeiture of time credits. *Id*. However, prison officials did not do so promptly. It was not until another CSR reviewed plaintiff's file after he applied for a job in 2004 that the charge of possession of heroin was reheard in April of 2004. SUF 10; Pl.'s Dep., at 49. Plaintiff was found guilty of this lesser offense. SUF 10. At deposition, plaintiff testified that Acuna knew that plaintiff was not guilty of the drug charges. Pl.'s Dep., at 46.

Plaintiff filed a petition for a writ of habeas corpus in the state court challenging the disciplinary conviction and seeking the restoration of his time credits and an order directing that it be expunged. SUF 11. However, as noted above, once the charge was reduced to possession of heroin, the credits were restored. Pl.'s Dep., at 52.

Plaintiff denies ever having been involved in drug activities in prison. Pl.'s Dep., at 46. Defendants submit no evidence that plaintiff ever used or distributed drugs in prison. Plaintiff was not in his cell at the time of the search. Pl.'s Dep., at 46-47. According to plaintiff's deposition testimony the bible containing the drugs was close to the cell bars near the tray

5

opening, which suggested to plaintiff that someone tossed it in. Pl.'s Dep., at 47.

Despite the events involving the heroin, plaintiff continues to file administrative grievances. SUF 12. He also continues to assist other prisoners with their grievances and legal work. Pl.'s Dep., at 67. This was the case both at FSP after the heroin charge and at California State Prison, Solano, to which plaintiff subsequently was transferred. Pl.'s Dep., at 68.

At deposition, plaintiff conceded that he did not file any grievances directly accusing defendant Acuna of misconduct. SUF 14. He also conceded that he has no direct evidence that Acuna placed the heroin in his cell in order to frame him on drug charges. SUF 13. Plaintiff believes that Acuna knew plaintiff filed grievances. SUF 20. But plaintiff admits he has no direct evidence that Acuna knew plaintiff filed grievances, or knew that plaintiff drafted the template that multiplied into 251 grievances against Acuna. He also admitted that he has no direct evidence that Campbell knew that he filed grievances or had any intent to retaliate against him. SUF 22, 23. He did testify, however, that both Campbell and Acuna knew of plaintiff's grievances because both had to respond to them. Pl.'s Dep., at 53, 57. Plaintiff also speculated at deposition that other prisoners may have informed Campbell and Acuna that plaintiff drafted the original of the 251 grievances about Acuna's handling of the retrofit project. Pl.'s Dep., at 58. He testified that before July 13, 2000, he did not himself file any administrative appeals complaining about defendant Acuna or defendant Campbell. Pl.'s Dep., at 34. Plaintiff helped other prisoners file grievances before July 13, 2000, but he did not keep track of how many. Pl.'s Dep., at 43-44.

Plaintiff testified that Campbell's position on the classification committees that reviewed his administrative segregation placement, and her authority to release him from administrative segregation, and her failure to so release him, in combination evidences a motive to retaliate against him. Pl.'s Dep., at 58. Defendants' evidence shows that Campbell was on some of these committees, but not all of them. Defs.' Ex. E.

////

**II.     Standards on Summary Judgment**

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Summary judgment avoids unnecessary trials in cases with no genuinely disputed material facts. *See Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, Rule 56 serves to screen the latter cases from those which actually require resolution of genuine disputes over material facts; e.g., issues that can only be determined through presentation of testimony at trial such as the credibility of conflicting testimony over facts that make a difference in the outcome. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Focus on where the burden of proof lies as to the issue in question is crucial to summary judgment procedures. "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set

1  forth in Rule 56(c), is satisfied." *Id.* at 323.

2     If the moving party meets its initial responsibility, the opposing party must establish that
3 a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v.*
4 *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To overcome summary judgment, the opposing
5 party must demonstrate a factual dispute that is both material, i.e. it affects the outcome of the
6 claim under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);
7 *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and
8 genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving
9 party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In this
10 regard, "a complete failure of proof concerning an essential element of the nonmoving party's
11 case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. In attempting to
12 establish the existence of a factual dispute that is genuine, the opposing party may not rely upon
13 the allegations or denials of its pleadings but is required to tender evidence of specific facts in
14 the form of affidavits, and/or admissible discovery material, in support of its contention that the
15 dispute exists.[3] *See* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11. It is sufficient that
16 "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
17 versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631.

18     Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the
19 proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587
20 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). However, the
21 opposing party must demonstrate with adequate evidence a genuine issue for trial.
22 *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989). The opposing party must do
23 so with evidence upon which a fair-minded jury "could return a verdict for [him] on the evidence

---

[3] A verified complaint may be used as an affidavit in opposition to the motion. *Schroeder v McDonald*, 55 F.3d 454, 460 (9th Cir. 1995); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam).

8

presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252.  If the evidence presented could not support a judgment in the opposing party's favor, there is no genuine issue. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. at 323.

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

On June 15, 2004, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**III.    Analysis**

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Here, plaintiff sues under 42 U.S.C. Section 1983 on the ground that defendants retaliated against him for exercising his First Amendment rights. To prove retaliation, plaintiff must show by a preponderance of the evidence that the defendant took some adverse action against plaintiff and

1  that this action was motivated by plaintiff's exercise of a First Amendment right and served no
2  legitimate penological purpose. *See Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2003);
3  *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). Institutional order and
4  discipline are legitimate penological goals. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).
5  Plaintiff must also prove a causal connection between the exercise of constitutional rights and
6  the allegedly retaliatory action. *See Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). The
7  parties agree that plaintiff's filing grievances constitutes the exercise of a First Amendment right.
8  *See Bruce v. Ylst*, 351 F.3d 1283 (9th Cir. 2003).

Plaintiff claims that defendants Campbell and Acuna arranged for three packets of heroin to be placed in his cell in retaliation for plaintiff's having filed grievances. Both defendants argue that there is no evidence to support the allegation, and further that there is no genuine issue about whether they knew of plaintiff's grievances.

**A. Defendant Acuna**

It is undisputed that plaintiff filed grievances before July 13, 2000, the day his cell was searched. It also is undisputed that he drafted the initial grievance about Acuna's directive to remove coverings from cell openings, which became the template for 251 grievances against Acuna. It is reasonable to infer that 251 grievances, if filed at or around the same time, would clog the administrative appeals system and become annoying. However, there is no evidence at all that Acuna was aware of the fact, or even suspected, that plaintiff drafted the template for these grievances. Plaintiff admits that he has no direct evidence to support such a finding. Although the undisputed evidence shows that he regularly assisted other prisoners, he does not submit any evidence that Acuna knew this. He does not even submit evidence that he had a reputation amongst prison officials for assisting his fellow prisoners, and that Acuna knew of this reputation. Thus, plaintiff fails to establish a genuine issue about whether the flood of grievances about Acuna motivated Acuna to retaliate against plaintiff.

////

Furthermore, plaintiff's August 27, 1999, December 20, 1999, or March 12, 2000 grievances do not provide a basis for finding that Acuna intended to retaliate against plaintiff. Plaintiff did not mention Acuna in these grievances, and there is no evidence that Acuna participated in the review of them. Plaintiff's assertion that Acuna must have known about them because he was a supervisor is simply speculation and asks the court to infer too much. There is no evidence that Acuna's job tasks included keeping track of prisoners' grievances. It is implausible that as Facility Captain, Acuna knew of each and every grievance the prisoners on his unit filed. To the contrary, under the regulations tracking grievances is the job of the Appeals Coordinator. Cal. Code Regs. tit. 15, § 3084.3(a). Plaintiff fails to establish a genuine issue about whether his August 27, 1999, December 20, 1999, or March 12, 2000, grievances caused Acuna to retaliate against him.

While the failure to establish the element addressed above renders all other factual disputes immaterial, the court also addresses the element of an adverse action; i.e., specifically the allegation that defendants planted heroin in his cell. Plaintiff asserts that never before the incident with the bible was he involved with drug activity in prison. Defendants do not directly dispute this assertion. The evidence also suggests that prison officials impermissibly filed disciplinary charges based on a field test of the substance instead of waiting for the lab test results. Furthermore, they found him guilty of trafficking and, on administrative appeal, it was determined that the evidence did not support a finding of trafficking. When directed to re-issue and re-hear the matter based on these defects, the matter was delayed years before taking any action to do so. These flaws do not place defendants in the most positive light. However, there is no evidence whatsoever that Acuna placed the heroin in plaintiff's cell or directed anyone else to do so. Plaintiff's extravagant accusation is wholly unsupported by the record. Thus, there is no genuine dispute about whether Acuna took any adverse action against plaintiff.

////

////

1  With respect to Acuna, then, plaintiff has failed to demonstrate a genuine issue of
2 material fact with respect to two elements of his claim and Acuna is entitled to summary
3 judgment.

### B. Defendant Campbell

As noted, plaintiff claims that defendant Campbell recommended holding him in administrative segregation for months before his January 2001, disciplinary hearing. Campbell contends that there is no genuine issue about whether she intended to retaliate. Plaintiff asserts that defendant Campbell knew that he drafted the complaint about Acuna, which, as explained above, became a template for a flood of grievances. He asserts that other prisoners must have informed her. However, he offers no evidence that other prisoners informed her of this fact. As noted above, there is no evidence that plaintiff had among prison officials a reputation for filing grievances, or that if he did Campbell knew of it. Thus, plaintiff's having drafted the grievance about Acuna cannot serve as a basis for finding that Campbell intended to retaliate against plaintiff.

Initially, Campbell asserted that she did not know about the grievances plaintiff submitted on his own behalf. However, plaintiff submitted evidence that she signed the decision partially granting relief on the second level of review of his March 12, 2000, appeal. In her reply to plaintiff's opposition, Campbell concedes that she signed that decision. Campbell does not submit a declaration denying an intent to retaliate or explaining the basis of her decisions about plaintiff's placement, but plaintiff concedes that he has no direct evidence that Campbell intended to retaliate against him. Moreover, the fact that she signed a decision partially granting one of plaintiff's grievance does not raise an inference that she later recommended plaintiff be housed in administrative segregation in retaliation. Indeed, there is no evidence to show that she was motivated by anything other than the fact that three packets of heroin had been found in

////

////

12

1  plaintiff's cell.[4]

2        Even if plaintiff were to demonstrate a *prima facie* showing of retaliatory motivation, the
3  defendant can prevail on summary judgment with undisputed evidence of a legitimate
4  penological purpose for the adverse action. *See Mt. Healthy City School Dist. Bd. of Educ. v.*
5  *Doyle*, 429 U.S. 274, 283-86 (1977) (after plaintiff satisfies his burden of showing that the
6  defendant's conduct was motivated by his exercise of a constitutional right, the burden shifts to
7  the defendant to establish that the decision would have been no different even in the absence of
8  the protected conduct). It is undisputed that plaintiff was placed in administrative segregation
9  after the substance found in plaintiff's cell tested positive for a controlled substance. It is also
10 undisputed that from July through January, classification committees decided to keep plaintiff in
11 administrative segregation pending a disciplinary hearing on the trafficking charges. It was
12 plaintiff's decision to postpone the administrative hearing until the District Attorney decided
13 whether to pursue criminal charges. The classification committees' reports show that their
14 decisions were based on the seriousness of the administrative charges and that they believed
15 plaintiff was a threat to the safety and security of the prison. Although Campbell was on four of
16 the five later committees, she was not a member of the committee that initially decided to hold
17 plaintiff in administrative segregation. Defs' Ex. E, at unnumbered p. 1, 2, 4-7. Campbell has
18 clearly demonstrated a legitimate penological reason to hold plaintiff in administrative
19 segregation until the matter was sorted out. By the time she was approving his retention there,
20 lab tests, as opposed to the field tests, had demonstrated that the substance was heroin. Nothing
21 submitted by plaintiff establishes that Campbell should have abandoned routine prison security
22 practices in this matter.[5] Neither has plaintiff shown and basis for this court not to defer to

---

[4] Moreover, plaintiff's cellmate also was charged with the offense, which makes it less likely that plaintiff was the target of prison officials' retaliation.

[5] *See* Cal. Code Regs. tit. 15, § 3335 (providing for periodic review of a prisoner's placement in administrative segregation).

prison administrators' decisions with regard to security and safety. *See Turner v. Safley*, 482 U.S. 78, 84-85 (1987) (observing that, "running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of" the state legislative and executive branches); *see also, Rhodes v. Chapman*, 452 U.S. 337, 349 n. 14 (1981) ("a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators"); *Michenfelder v. Sumner*, 860 F.2d 328, 331 (9th Cir. 1988) (federal district courts must give great deference to prison officials' assessments of security and safety concerns in a correctional setting).

Plaintiff fails to submit evidence upon which a reasonable jury could rely to conclude that Campbell's decisions here were motivated by retaliation and the speculation that plaintiff offers is insufficient to withstand summary judgment. Thus, Campbell's motion must be granted.

**IV.  Qualified Immunity**

Because the court resolves the summary judgment motion relating to the merits in favor of defendants, there is no reason to enquire further into an asserted defense of qualified immunity. *See Wilkie v. Robbins*, 127 S.Ct. 2588, 2608 (2007).[6]

**V.  Conclusion**

Accordingly, it is hereby RECOMMENDED that defendants' June 23, 2006, motion for summary judgment be granted and that judgment be entered in their favor.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections

---

[6] Similarly, the court need not address defendants' revived argument that plaintiff's claims are not cognizable based on *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). The argument was rejected in the December 21, 2006, order denying defendants' motion for judgment on the pleadings. In light of the analysis above, the court does not reach the suggestion that the earlier ruling be reconsidered.

with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 8, 2008.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE